AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE: _Rodney McGloin_ 1-12-21

# UNITED STATES DISTRICT COURT
### for the
WESTERN _____ DISTRICT OF _____ OKLAHOMA _____

In the Matter of the Search of        )
*(Briefly describe the property to be search*        )        M-21-21- P **FILED**
*Or identify the person by name and address)*        )        Case No: M-21-001-STE
Bargain Guns        )
22873 State Highway 74        )        **JAN 1 2 2021**
Purcell, Oklahoma 73080        )
                    CARMELITA REEDER SHINN, CLERK
                    U.S. DIST. COURT, WESTERN DIST. OKLA.
                    BY _____ , DEPUTY

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:

☒    evidence of the crime;
☐    contraband, fruits of crime, or other items illegally possessed;
☐    property designed for use, intended for use, or used in committing a crime;
☐    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(m) | Making False Entry or Failure to Make Entry in Records by Federal Firearms Dealer |

The application is based on these facts:

See attached Affidavit.

☒    Continued on the attached sheet(s).
☐    Delayed notice of [No. of Days]   days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*
Jared Lowe, Special Agent, ATF

Sworn to before me and signed in my presence.

Date: _1/12/2021_

_____
*Judge's signature*

City and State:   Oklahoma City, Oklahoma          GARY M. PURCELL, U.S. Magistrate Judge
                    *Printed name and title*

# ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

### 22873 State Highway 74 Purcell, Oklahoma 73080

The subject business / residence is located at 22873 State Highway 74, in the City of Purcell, County of McClain, in the Western District of Oklahoma.  The business / residence is located on the west side of State Highway 74 approximately ¼ of a mile South of Sand Creek Road (230th Street).  The business / residence is a single-family home constructed of red brick, white trim, and a grey composite roof.  The front door of the business / residence faces east and is accessed by a small covered porch.  The numbers "22873" are displayed on a white fence post located on the north edge of the driveway leading to the business / residence.

1





2



22873 State Hwy 74

Restaurants | Gas | Groceries | Coffee

22873 OK-74

## 22873 OK-74
22873 OK-74, Purcell, OK 73080

3



## ATTACHMENT B

### ITEMS TO BE SEIZED

The items to be seized include the following:

1) Business and/or personal records of firearms transactions and financial records and other records or documents reflecting firearms activity or the disposition of firearms proceeds including, but not limited to the following:

   a) Retained copies of federal, state and local corporate, partnership, business and personal income tax returns; Forms W-2, Forms 1099; tax records; any supporting documentation and attachments; and any correspondence to/from taxing agencies;

   b) Notes of financial transactions or firearms transactions;

   c) Correspondence, including electronic mail transmissions, letters, faxes and notes, relating to financial transactions or firearms transaction, including the identification of customers, suppliers, associates partners and co-conspirators;

   d) Bank records, including deposit slips, cancelled checks, withdrawal slips, and account statements, investment records, including brokerage statements, or credit and debit card records;

   e) Currency, bank checks, cashier's checks, prepaid access devices, negotiable financial instruments, wire transfer documentation, money orders, stocks bonds, precious metals, or real estate records; or worksheets, tally sheets or ledger sheets reflecting or accounting for money received, disbursed or exchanged;

   f) Financial statements, income statements, balance sheets, cash receipts, cash disbursements, payroll, inventory and journals and records; and any supporting work papers, schedules, attachments or documents;

   g) Bills and invoices, including sales, purchases, and expenses;

   h) Records of financial payments paid and received;

   i) Records and keys of storage facilities owned or rented;

   j) Records of business filings or licenses;

   k) Records of personal and business expenses;

1



l)  Equipment rental records and other lease and rental agreements;

m) Transportation records, including but not limited to, accounts, bills, receipts and invoices, bills of lading, airway bills, freight bills, air cargo bills, dispatch records, logs, manifests, shipping documents and invoices;

n)  Credit applications, credit card statements and receipts;

o)  Paper tickets, notes, schedules, receipts, or other items relating to travel;

p)  Cellular phone, cellular and landline telephone statement and records;

2)  Acquisition and Disposition (A&D) Books, any ATF Firearm Forms, Federal Firearm Licenses or applications;

3)  Records that identify customers, suppliers associates, partners or co-conspirators, including, but not limited to, address books, telephone books, rolodexes, telephones, pagers or personal digital assistants and/or smart phones with stored telephone information, notes reflecting telephone and pager numbers, photographs (to include still photos, digital photos, negatives, movies, slide, video tapes and undeveloped film), and audiotape or digital recordings of conversations, including those made over telephone answering machines or digital voicemail;

4)  Identification documents and representative exemplars of original handwriting samples;

5)  Indicia of occupancy, residency, or ownership of the premise, property or vehicles, including keys, photographs, or documents;

6)  Computers, flash/jump drives, computer hard drives, external hard drives, discs, etc. and other storage devices that can be used to save/store information, to include the off-site viewing and copying of such files or devices;

7)  In searching for data capable of being read, stored or interpreted by a computer, law enforcement personal executing the warrant will employ the following procedure:

a) Upon securing the premises, law enforcement personal trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment storage devices to determine whether these items can searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data;



b) If the computer equipment and storage devices cannot be searched on-site in a reasonable amount of time, then the computer personnel will determine whether it is practical to copy the data during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve the data;

c) If the computer personnel determine it is not practical to perform an on-site search or make an on-site copy of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein;

d) In searching the data the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein;

e) If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of whether the data falls within any of the items to be seized pursuant to this warrant, it must obtain an extension of the time period from the Court within the original sixty-day period.

8) In order to search for data that is capable of being read or interpreted by a computer, law enforcement personal will need to seize and search the following items, subject to the procedures set forth above;

a) Any computer equipment and storage devices capable of being used to commit, further or store evidence of the offenses(s) listed above;

b) Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices and optical scanners;

c) Any magnetic, electronic or optical storage device capable of storing data, such as floppy, disks, hard disks, tapes, CD-ROMS, CD-Rs, CD-RWs, DVDs, DVD-Rs, DVD-RWs, memory cards, flash/jump drives, optical disks, printer or memory buffers, smart cards, PC Cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, or smart phones;

3



d) Any documentation, operating logs, and reference manuals regarding the operation of computer equipment, storage devices and/or software;

e) Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f) any physical keys, encryption devices, dongles or similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g) Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

9) Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, locked cabinets and other types of locked or closed containers, and hidden compartments that may contain any of the foregoing;

10) Any and all firearms that have been improperly recorded or maintained in violation of 18 U.S.C. § 922(m).

The terms such as "records", "documents", "information", "correspondence", "notes", etc. include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, and/or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROMS, CD-Rs, CD-RWs, DVDs, DVD-Rs, DVD-RWs, memory cards, flash/jump drives, optical disks, printer or memory buffers, smart cards, PC Cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and smart phones as well print outs or readouts from any magnetic storage device); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

As all of the above described property constitutes evidence of the commission of a criminal offense, is contraband, the fruits of crime or things otherwise criminally possessed and/or is property designed or intended for use or which is or had been used as a means of committing a criminal offense.



## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jared H. Lowe, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) being duly sworn, depose and state that:

## INTRODUCTION

1. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since January 2015. Prior to Employment with ATF, I was employed as a police officer in the State of Oklahoma for approximately 10 years. I have been employed in law enforcement for over fifteen years. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigations Training Program (CITP) and the ATF National Academy. As part of my duties as a Special Agent with ATF, I investigate criminal violations related to firearms trafficking, and the illegal possession of firearms by prohibited persons. I am currently assigned to the Oklahoma City Field Office and am charged with investigating violations of Federal Law, including violations of the Gun Control Act of 1968, as amended (Title 18, United States Code, Sections 921 et seq.), explosives, arson, alcohol, and tobacco laws.

2. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants under the authority of the United States.

3. I am investigating Amy Michele CARWILE (CARWILE), co-owner and co-responsible licensee of OK Trailer Holding LLC, dba - Bargain Guns, a Federal Firearms Licensee (FFL) located at 22873 State Highway 74, Purcell, Oklahoma, within the Western District of Oklahoma. As will be shown below, there is probable

1

cause to believe that CARWILE has violated 18 U.S.C. § 922(m) which prohibits any licensed dealer from making a false entry in, failing to make an appropriate entry in, or failing to properly maintain, any record which he/she is required to keep pursuant to section 923.   I submit this Application and Affidavit in support of a search warrant authorizing a search of OK Trailer Holding LLC, dba – Bargain Guns (SUBJECT BUSINESS) located at 22873 State Highway 74, Purcell, Oklahoma, Western District of Oklahoma, which is further described in Attachment A, for all items more particularly described in Attachment B.

4.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of a crime, contraband, fruits of a crime, or other items illegally possessed, or property designed for use, intended for use, or used in committing a crime involving the foregoing violations are presently located at the SUBJECT BUSINESS.

5.  Based upon my training and experience, I know that FFLs are businesses engaged in the acquisition and disposition of firearms. FFLs are required to follow certain rules as a requirement to maintain their license from ATF.  An FFL must keep track of each of their firearms in an acquisition and disposition (A&D) book, and conduct background checks on every purchaser of firearms from their business.  If a person brings a firearm to the FFL to "trade in" on the purchase of a new firearm, the FFL is required to enter the "traded in" firearm into the acquisition portion of the business

A&D book.  When and if the "traded in" firearm is sold by the FFL, an additional entry must be made into the disposition portion of the business A&D book.  This process of acquiring and disposing of firearms within the business A&D book is the same, regardless of how a particular firearm became listed in the business firearm inventory.

6.  Based on my training, I know that some FFLs have engaged in the illegal sale of firearms "off the books", meaning selling a firearm, or firearms, that do not have either an acquisition or disposition with in the business A&D book.  One technique to accomplish an "off the books" sale is to acquire a firearm, or firearms, on a "trade in".  This occurs when a purchaser wishes to "trade in" his/her firearm, or firearms, to the FFL and have the equity of those particular firearms taken off the purchase price of a new firearm. The FFL would then sell the purchaser the new firearm from the business inventory, and make a disposition entry in the A&D book for the firearm that was sold. The "traded in" firearm, or firearms, would then be set aside and not entered into the acquisition portion of the A&D book.  The non-acquisitioned firearm, or firearms, are then sold to anyone, possibly prohibited persons by bypassing the background check requirement, because the business A&D book shows no record of an acquisition or disposition of the "off the books" sale.

## BACKGROUND OF THE INVESTIGATION

7.  On or about September 14, 2020, the ATF – Oklahoma City Field Office received information regarding the recovery of numerous firearms in Reynosa, Tamaulipas,

3

Mexico on August 25, 2020. One (1) of the firearms recovered had a time-to-crime (TTC) of twenty-nine (29) days, meaning twenty-nine (29) days from the time of initial purchase until the time of recovery in Mexico. The investigation revealed that W.F., a resident of Oklahoma City, Oklahoma, which is located within the Western District of Oklahoma, originally purchased the firearm from Academy Sports & Outdoors (Store #86) on July 27, 2020. The firearm purchased by W.F. is described as a Glock GmbH, Model 44, .22 caliber pistol, bearing serial number: AEEA642, hereafter referred to as Glock44.

8.  On October 2, 2020, I conducted a consensual interview of W.F., in Oklahoma City, Oklahoma. W.F. stated that shortly after purchasing the Glock44, he found a different firearm listed for sale on Armslist.com, which was a Glock GmbH, Model 19 Gen4, 9mm caliber pistol, bearing serial number: AELF072, hereafter referred to as Glock19. W.F. stated that he contacted the telephone number attached to the Armslist.com listing, (405) 642-4216, and arranged with the seller to purchase the Glock19. W.F. further stated that he traded his Glock44 in to the seller on the purchase of the new Glock19 on or about July 31, 2020. W.F. provided me with a text message thread listing the name "Amy". In the text message thread, the purchase price of the new Glock19 was discussed as "$599.00 cash plus tax", the trade in value of the Glock44 was discussed as "$250.00 trade", as well as where W.F. had to travel to meet with the seller, 22873 State Highway 74, Purcell, Oklahoma 73080.

9.  On October 2, 2020, after leaving the interview with W.F., I conducted a query of the telephone number provided by W.F., (405) 642-4216, and the address, 22873 State Highway 74, Purcell, Oklahoma 73080 through the ATF FFL database.  The query shows both the telephone number and address provided by W.F. belonging to a current FFL, OK Trailer Holding LLC, dba – Bargain Guns, (405) 642-4216, 22873 State Highway 74, Purcell, Oklahoma 73080, ATF License Number: 5-73-087-01-1G-04110.  The responsible parties listed on the FFL license are Amy and Kevin CARWILE.

10. On October 5, 2020, I conducted a consensual interview of Amy CARWILE at the FFL business location, 22873 State Highway 74, Purcell, Oklahoma.  I informed CARWILE of the reason for the visit and requested a copy of the ATF Form 4473, Firearms Transaction Record, completed by W.F. on or about July 31, 2020. Initially, CARWILE was unable to locate the ATF Form 4473 by comparing dates within the A&D book to acquisitions of a firearm on or about July 31, 2020.  I requested to assist CARWILE in looking through the A&D book.  While scanning the A&D book by date, I was unable to locate an acquisition of a Glock44 on or around July 31, 2020.  I was however able to locate the disposition of the Glock19, sold to W.F. on July 31, 2020.  After locating the disposition of the Glock19, CARWILE was able to locate the ATF Form 4473 completed by W.F. on July 31, 2020.

11. Along with providing me with a copy of the ATF Form 4473, CARWILE also provided me with a receipt / bill of sale, listing the information on the Glock19.

CARWILE stated that W.F. did not "trade in" a firearm on the purchase of the new Glock19 because if W.F. had, the information for the "trade in" would be listed on the receipt / bill of sale. CARWILE further stated that W.F. paid $415.00 of the purchase onto his credit card, which is referenced on the receipt / bill of sale. CARWILE then flashed another piece of paper to me stating that W.F. signed and authorized the transaction onto his credit card, but did not provide me with a copy of that document. Based on the information gathered from CARWILE, I left the interview and immediately contacted W.F. for a second interview and explanation of what CARWILE told me.

12. On October 5, 2020, I conducted a follow-up interview of W.F. based on the information provided to me by CARWILE. When confronted with the information, W.F. became somewhat defensive and was adamant that he was telling me the truth. W.F. stated that he "traded in" the Glock44 on the purchase of the new Glock19. W.F. was shown the receipt / bill of sale provided by CARWILE. W.F. immediately pointed out that he paid cash for the new Glock19, not credit card, and stated that he signed the receipt / bill of sale during the purchase, as well as signing a form listing $250.00 "trade in" value of the Glock44. W.F. stated that the receipt / bill of sale had been falsified, because the math on the receipt did not add up and his signature was not on it. W.F. then provided me with a screen shot (photograph) of his online bank account showing a withdrawal of $420.00 in cash on July 31, 2020. W.F. stated that using the money he withdrew from his bank account, along with

the "trade in" value of $250.00, this information matches the initial text message thread between himself and the sellers of the Glock19.

13. On October 5, 2020, I contacted CARWILE via telephone in order to clear up some inconsistencies in her story after again speaking with W.F. CARWILE was unable to answer many of the questions I had because the questions were document / paperwork related and CARWILE stated that she did not have copies of the documents in front of her at that time. CARWILE did state that the business only has customers sign the ATF Form 4473 and the form authorizing a credit card transaction. CARWILE stated that she has never had a customer sign the receipt / bill of sale, and the business does not have a form to sign listing "trade in" allowance on firearms. I then requested a copy of the form CARWILE had earlier flashed to me, the credit card authorization form supposedly signed by W.F. CARWILE stated that she would have a copy of the form emailed to me immediately. (As of today's date, I have not received a copy of the requested document from CARWILE)

14. Prior to ending the telephone call with CARWILE, I asked her if it were possible that W.F. did in-fact "trade in" the Glock44 on the purchase of the new Glock19, but the Glock44 was not entered into the A&D book and then sold in a back door style of deal. CARWILE stated that she could not say something like that scenario has never happened, but if it did happen, the firearm would have been sold to a close family friend or someone like that. I then directly asked CARWILE if the Glock44 was sold in that manner, she stated that she truly could not remember. I then asked CARWILE which close family friend the firearm would have been sold to.

7

CARWILE would not answer the question, but she did state there are only one (1) or two (2) people that she would "trust" to do that with.

15. On October 6, 2020, I received a telephone call from CARWILE. CARWILE sounded very nervous and her voice was very shaky as she was speaking. CARWILE advised me that she and her husband, Kevin CARWILE, were speaking yesterday after she and I last spoke. CARWILE stated that they remembered W.F. did "trade in" the Glock44 on the purchase of the new Glock19, however the Glock44 was never entered into the A&D book. CARWILE advised the Glock44 was sold to a "close family friend" named M.W. CARWILE provided me with M.W.'s telephone number, but no additional information.

16. On October 19, 2020, I conducted a consensual interview of M.W. M.W. admitted to purchasing the Glock44 from CARWILE while at a gun show on or about August 1, 2020. M.W. stated that he works for CARWILE, occasionally helping out when the business sets up a booth at local gun shows. M.W. admitted to purchasing approximately seven (7) or eight (8) firearms from CARWILE over the past few years. When asked, M.W. further admitted to not filling out the ATF Form 4473 every time he purchases a firearm from CARWILE, only filling out the form "sometimes".

17. On January 12, 2021, ATF agents executed the search warrant at the SUBJECT BUSINESS. During this process, the agents began to search the SUBJECT BUSINESS's 4473 forms and A&D books. While searching for these documents, agents located approximately 40 incomplete 4473 forms in a cabinet under a

bathroom counter. Under *Miranda*, CARWILE admitted that the information on these documents is falsified, and that all of those firearms were sold without a background check.

18. Also, after *Miranda*, the agents learned that firearms are stored in two areas on the SUBJECT BUSINESS's property. One location is within a residence and the other is within a shop located on the curtilage of the property. Through observing the firearm inventories, agents could see that some firearms had red price tags and others had white price tags. Under *Miranda*, the agents learned that, within the shop, the SUBJECT BUSINESS treats these firearms differently according to the price tag color. Firearms with a red price tag were properly recorded within an A&D book. Firearms with a white price tag, however, were not recorded within an A&D book. In contrast, within the residence on the property, CARWILE could not clearly tell the agents which firearms were properly kept on the books and which were not, regardless of the price tag color.

## CONCLUSION

19. Based on the aforementioned facts and circumstances, I believe there is probable cause to believe evidence of a violation of 18 U.S.C. § 922(m) exists at the SUBJECT BUSINESS further described in attachments A and B. The basis of this violation is that the SUBJECT BUSINESS currently possesses falsified documents related to the hidden acquisition of firearms as evidenced by the documentation that was signed by W.F. involving the "trade in" of the Glock44, the receipt / bill of sale for the purchase of the new Glock19, and the credit card authorization document.

CARWILE failed to document the acquisition of the Glock44 firearm into the SUBJECT BUSINESS A&D book in violation of 18 U.S.C. § 922(m).

20. I, therefore, respectfully request that the attached search warrant issue authorizing the search of Attachment A and seizure of the items listed in Attachment B.

Jared H. Lowe
Special Agent
Bureau of Alcohol Tobacco and Firearms

Sworn and subscribed before me this _12th_ day of January, 2021.

GARY. M. PURCELL
United States Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

### 22873 State Highway 74 Purcell, Oklahoma 73080

The subject business / residence is located at 22873 State Highway 74, in the City of Purcell, County of McClain, in the Western District of Oklahoma. The business / residence is located on the west side of State Highway 74 approximately ¼ of a mile South of Sand Creek Road (230th Street). The business / residence is a single-family home constructed of red brick, white trim, and a grey composite roof. The front door of the business / residence faces east and is accessed by a small covered porch. The numbers "22873" are displayed on a white fence post located on the north edge of the driveway leading to the business / residence.

1





**22873 OK-74**
22873 OK-74, Purcell, OK 73080

3



## **ATTACHMENT B**

### ITEMS TO BE SEIZED

The items to be seized include the following:

1) Business and/or personal records of firearms transactions and financial records and other records or documents reflecting firearms activity or the disposition of firearms proceeds including, but not limited to the following:

   a) Retained copies of federal, state and local corporate, partnership, business and personal income tax returns; Forms W-2, Forms 1099; tax records; any supporting documentation and attachments; and any correspondence to/from taxing agencies;

   b) Notes of financial transactions or firearms transactions;

   c) Correspondence, including electronic mail transmissions, letters, faxes and notes, relating to financial transactions or firearms transaction, including the identification of customers, suppliers, associates partners and co-conspirators;

   d) Bank records, including deposit slips, cancelled checks, withdrawal slips, and account statements, investment records, including brokerage statements, or credit and debit card records;

   e) Currency, bank checks, cashier's checks, prepaid access devices, negotiable financial instruments, wire transfer documentation, money orders, stocks bonds, precious metals, or real estate records; or worksheets, tally sheets or ledger sheets reflecting or accounting for money received, disbursed or exchanged;

   f) Financial statements, income statements, balance sheets, cash receipts, cash disbursements, payroll, inventory and journals and records; and any supporting work papers, schedules, attachments or documents;

   g) Bills and invoices, including sales, purchases, and expenses;

   h) Records of financial payments paid and received;

   i) Records and keys of storage facilities owned or rented;

   j) Records of business filings or licenses;

   k) Records of personal and business expenses;

1

l) Equipment rental records and other lease and rental agreements;

m) Transportation records, including but not limited to, accounts, bills, receipts and invoices, bills of lading, airway bills, freight bills, air cargo bills, dispatch records, logs, manifests, shipping documents and invoices;

n) Credit applications, credit card statements and receipts;

o) Paper tickets, notes, schedules, receipts, or other items relating to travel;

p) Cellular phone, cellular and landline telephone statement and records;

2) Acquisition and Disposition (A&D) Books, any ATF Firearm Forms, Federal Firearm Licenses or applications;

3) Records that identify customers, suppliers associates, partners or co-conspirators, including, but not limited to, address books, telephone books, rolodexes, telephones, pagers or personal digital assistants and/or smart phones with stored telephone information, notes reflecting telephone and pager numbers, photographs (to include still photos, digital photos, negatives, movies, slide, video tapes and undeveloped film), and audiotape or digital recordings of conversations, including those made over telephone answering machines or digital voicemail;

4) Identification documents and representative exemplars of original handwriting samples;

5) Indicia of occupancy, residency, or ownership of the premise, property or vehicles, including keys, photographs, or documents;

6) Computers, flash/jump drives, computer hard drives, external hard drives, discs, etc. and other storage devices that can be used to save/store information, to include the off-site viewing and copying of such files or devices;

7) In searching for data capable of being read, stored or interpreted by a computer, law enforcement personal executing the warrant will employ the following procedure:

a) Upon securing the premises, law enforcement personal trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment storage devices to determine whether these items can searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data;

b) If the computer equipment and storage devices cannot be searched on-site in a reasonable amount of time, then the computer personnel will determine whether it is practical to copy the data during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve the data;

c) If the computer personnel determine it is not practical to perform an on-site search or make an on-site copy of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein;

d) In searching the data the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein;

e) If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of whether the data falls within any of the items to be seized pursuant to this warrant, it must obtain an extension of the time period from the Court within the original sixty-day period.

8) In order to search for data that is capable of being read or interpreted by a computer, law enforcement personal will need to seize and search the following items, subject to the procedures set forth above;

a) Any computer equipment and storage devices capable of being used to commit, further or store evidence of the offenses(s) listed above;

b) Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices and optical scanners;

c) Any magnetic, electronic or optical storage device capable of storing data, such as floppy, disks, hard disks, tapes, CD-ROMS, CD-Rs, CD-RWs, DVDs, DVD-Rs, DVD-RWs, memory cards, flash/jump drives, optical disks, printer or memory buffers, smart cards, PC Cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, or smart phones;

3

d) Any documentation, operating logs, and reference manuals regarding the operation of computer equipment, storage devices and/or software;

e) Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f) any physical keys, encryption devices, dongles or similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g) Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

9) Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, locked cabinets and other types of locked or closed containers, and hidden compartments that may contain any of the foregoing;

10) Any and all firearms that have been improperly recorded or maintained in violation of 18 U.S.C. § 922(m).

The terms such as "records", "documents", "information", "correspondence", "notes", etc. include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, and/or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROMS, CD-Rs, CD-RWs, DVDs, DVD-Rs, DVD-RWs, memory cards, flash/jump drives, optical disks, printer or memory buffers, smart cards, PC Cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and smart phones as well print outs or readouts from any magnetic storage device); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

As all of the above described property constitutes evidence of the commission of a criminal offense, is contraband, the fruits of crime or things otherwise criminally possessed and/or is property designed or intended for use or which is or had been used as a means of committing a criminal offense.